## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; GLOBAL AEROSPACE UNDERWRITING MANAGERS LIMITED; MITSUI SUMITOMO INSURANCE COMPANY (EUROPE), LTD; TOKIO MARINE EUROPE INSURANCE LIMITED; BERKSHIRE HATHAWAY INTERNATIONAL INSURANCE LIMITED; GREAT LAKES REINSURANCE (UK) PLC; WURTTEMBERGISCHE VERSICHERUNG AG; SWISS RE INTERNATIONAL SE UK BRANCH; ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, AND NATIONAL FIRE & MARINE INSURANCE COMPANY,**

       *Plaintiffs,*

vs.

**GARMIN INTERNATIONAL INC. and HENRY P. BARTLE**,

       *Defendants.*

Case No. 11-2426 EFM-GLR

## MEMORANDUM AND ORDER

This case arises out of a claim by Defendant Henry P. Bartle that he was involved in a joint venture with Defendant Garmin International, Inc. ("Garmin") to construct a  kit-built, Lancair IV-P aircraft ("the Aircraft") and share information with Garmin regarding the installation in the Aircraft of a navigation system  manufactured and marketed by Garmin.  Plaintiffs Certain Underwriters at Lloyd's, London et. al. ("Plaintiffs"), issued and underwrote an Aviation and Grounding Liability insurance policy to Garmin ("the Policy"). Following a crash involving the Aircraft, Bartle claimed coverage under the Policy as a joint venturer with Garmin. Plaintiffs brought this declarative judgment action under the Declaratory Judgment Act,[1] seeking to establish that: (1) Garmin and Bartle were not engaged in a joint venture; (2) there is no coverage under the Policy because of a lack of a "Product Hazard" as required by the Policy, and (3) the Policy excludes liability "arising out of the use or handling or existence of any condition in any Aircraft Product."

The following motions are now before the Court: (1) Defendant Bartle's Motion to Dismiss the claim for declaratory judgment, asking the Court to exercise its discretion to refuse to assume jurisdiction over the action; and (2) Bartle's Rule 12(b)(2)[2] Motion to Dismiss for lack of personal jurisdiction. The court denies Bartle's motion to dismiss based on the discretion of the court in claims for declaratory judgment, and denies the Rule 12(b)(2) motion.

## I. BACKGROUND

Bartle, who is a resident of Oregon, is the owner of the Aircraft which he began building in 2000. In 2005, Bartle met his neighbor, Chris Schulte, who was a Garmin Employee. Schulte used

---

[1] 28 U.S.C.A. §§ 2201 *et. seq.* (2010).

[2] Fed. R. Civ. P. 12(b)(2) ( 2011).

his employee discount to purchase a G900X navigation system from Garmin for the Aircraft. Bartle paid for the G900X. Schulte also completed the design and installation of the wiring of the electrical system on the Aircraft. In addition, Schulte also arranged to have friends and co-workers assist with the wiring of the G900X.  In exchange, Bartle gave Garmin access to the Aircraft in order to obtain installation and substantiation data.

It is relevant to the Court's analysis to note that the design and installation of the electrical system on the Aircraft, including the wiring of the G900X occurred in Oregon.  All negotiations and meetings between Bartle and Garmin's employees and agents occurred in Oregon.

On February 26, 2008, Bartle was flying the Aircraft when it lost power on its final approach to French Valley Airport in Riverside County, California. Bartle crash-landed the Aircraft, injuring himself and three passengers: his step-daughter Shawna Wilson, her friend Catherine Ann Hopkins, and Hopkins' daughter Hanna Elizabeth Hopkins. "According to the NTSB report, the cause of the crash was a total loss of engine power while on approach due to an electrical overload of a fuse caused by the inadequate design and installation of the electrical system."[3]

The passengers filed separate suits against Bartle seeking damages for their injuries. Subsequently, Bartle brought suit against Performance Engines and Light Speed Engineering for claims of product liability, negligence, and breach of warranty. Bartle also added Garmin International and Garmin AT as defendants alleging joint venture and claiming total equitable indemnity, comparative indemnity, equitable apportionment of fault, and contribution.

In a letter dated June 29, 2011, Bartle sought coverage under an Aviation and Grounding Liability insurance policy issued and underwritten by Plaintiffs to Garmin**.**          In the letter, Bartle

---

[3] Doc. 1 pg. 10

held himself out to be a co-venturer with both Garmin and Garmin A.T. Bartle alleges and believes

he was in a joint venture with Garmin and Garmin A.T., a subsidiary of Garmin, to build the Aircraft,

and in the development and manufacture of a special mount for Garmin's G900X for installation in

Lancair IV-P aircraft. In addition, Bartle also asserts he has a Garmin vendor number and is listed as

a source for the installation mount in the current Garmin installation manual.

Plaintiffs brought this claim for declaratory judgment regarding coverage of Bartle under the

policy as a joint venturer with Garmin. Plaintiffs are not named parties in the underlying negligence

and  product liability actions in California State Court.

Garmin's principal place of business is in Olathe, Kansas, while Garmin A.T.'s is in Salem

Oregon. The policy for which Plaintiffs seek declaratory judgment was negotiated and issued in

Kansas, and is governed by Kansas law. All authorized joint ventures between Garmin and/or its

subsidiaries must be approved by Garmin executives in Olathe, Kansas**.**

## II. Declaratory Judgment

### A. Factors the Court Must Consider When Deciding Whether to Hear a Declarative Judgment Action

Under the Declaratory Judgment Act,[4] federal courts have discretion in deciding to hear a

declaratory judgment action.[5]   When deciding whether to hear a declaratory judgment action, the

Court has the obligation to weigh the following factors:

> [1] whether a declaratory action would settle the controversy; [2] whether it would
> serve a useful purpose in clarifying the legal relations at issue; [3] whether the
> declaratory remedy is being used merely for the purpose of "procedural fencing" or

---

[4] 28 U.S.C.A. §§ 2201 *et. seq.* (2010).

[5]  *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (internal citations omitted).

"to provide an arena for a race to *res judicata* "; [4] whether use of a declaratory
action would increase friction between our federal and state courts and improperly
encroach upon state jurisdiction; and [5] whether there is an alternative remedy
which is better or more effective.[6]

"A Federal Court should not entertain a declaratory judgment action if the same fact-dependent
issues are likely to be decided in a pending proceeding. But nothing in the Declaratory Judgment
Act prohibits a court from deciding a purely legal question of contract interpretation which arises
in the context of a justiciable controversy presenting other factual issues."[7]

**B. It is Proper for the Court to Exercise its Discretion to Hear this Declarative Judgment
Action**

After weighing each of the above factors, the Court finds that it is appropriate to exercise
its discretion to hear this declaratory judgment action.

The first factor the Court must weigh is "whether or not the declarative judgment action
will settle the controversy[.]"[8] In this case, the declaratory judgment action will settle the issue of
whether or not under Kansas law, a joint venture existed for purposes of coverage under the
Policy. In addition, this action will also settle issues relating to coverage beyond the existence of a
joint venture. This factor weighs in favor of the declaratory judgment action.

The second factor the Court considers is "whether or not the action will serve a useful
purpose by clarifying the legal relations at issue[.]"[9] This factor also weighs in favor of hearing the
action. In this case, the action will clarify the legal relations between the Plaintiffs and Bartle

---

[6] *Id.* at, 983 (internal citations omitted).

[7] *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989) (internal citations omitted).

[8] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, at 983

[9] *Id.*

concerning coverage under the Policy. Because the issues of coverage are not being addressed in the underlying suit, proceeding with the action will not be a waste of judicial resources (as Bartle contends).

The third factor the Court must weigh is "whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*[.]"[10] Because the terms, conditions, and exclusions of the Policy are not before the California court in the underlying action, and because that action will likely be resolved prior to the resolution of this declaratory judgment action, this factor also weighs in favor of hearing the action.

The fourth factor the Court must take into account is "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction[.]"[11] Bartle argues that because the existence of a joint venture between Garmin and him is at issue before the California court, the same fact intensive issue would be addressed in both the underlying suit and the declaratory judgment action. According to Bartle, this factor weighs heavily against the Court hearing the action. Plaintiffs counter by arguing that the California court has declined to decide the issues of coverage addressed in this action.  They further argue that the decision in the underlying suit regarding the existence of a joint venture would be based on California law, while coverage under the Policy as a result of a joint venture is governed by Kansas law. Because the issues of coverage addressed in this action, including the existence of a

---

[10] *Id.*

[11] *Id.*

joint venture between Bartle and Garmin under Kansas law as specified by the Policy, are not before the California court, this factor also weighs in favor of hearing the action.

The fifth factor the Court weighs is whether there is an alternative remedy which is better or more effective. In this case Bartle has requested a stay of the action until after the underlying case is heard in the California Court. However, because the California Court will not make a decision regarding coverage under the policy, the Court does not find a stay qualified as an alternative remedy. No other alternative remedy was proposed. This factor also weighs in favor of hearing the action.

After weighing the factors outlined above, Bartle's Motion to Dismiss the declaratory judgment action is denied.

### III. Personal Jurisdiction

## A. Bartle must have "Minimum Contacts" with Kansas to Meet the Requirements of Due Process

To meet the constitutional requirement of due process, there must be "minimum contacts" between the defendant and the forum state.[12] Plaintiffs have the burden of establishing personal jurisdiction over the defendant.[13] "When the evidence presented on the motion to dismiss consists of affidavits and other written materials, the plaintiff only need make a prima facie showing."[14]

The "minimum contacts" standard may be met by one of two ways: (1) "when the defendant has continuous and systematic general business contacts in the forum state, courts in that

---

[12] *Bell Helicopter Textron, Inc. v. Heliquest Intern., Ltd.*, 385 F.3d 1291, 1295 (10th. Cir. 2004) (internal citations omitted).

[13] *Id.* (internal citations omitted).

[14] *Id*. (internal citations omitted).

state may exercise *general jurisdiction*;" and (2) "when the defendant has 'purposely directed' his activities at residents of the forum, courts in that state may exercise *specific jurisdiction* in cases that 'arise out of or relate to those activities.'"[15]

## B. Personal Jurisdiction over Bartle is Appropriate Because Minimum Contacts are met and does not Offend Notion of "Fair Play and Substantial Justice"

*i. Minimum Contacts Established by Bartle's Assertions of Joint Venture*

Bartle does not have a residence in Kansas and has no other continuous, general or systematic ties to the state of Kansas. Therefore, the Court must look to the extent to which Bartle has 'purposely directed' his activities at a resident or residents of Kansas, and whether or not the case "arises out of or relates to those activities."

Viewing the facts in a light most favorable to Plaintiffs, the Court finds that Plaintiffs made a prima facie showing of minimum contacts with the forum state. Plaintiffs have shown that Bartle held himself out to be in a joint venture with both Garmin, and Garmin A.T. In addition, Plaintiffs have shown that Bartle held out that he had an extensive and ongoing relationship with Garmin in relation to the G900X, including the manufacture and sale of special mounts for the G900X, and has his own Garmin vendor number. Plaintiffs have also shown that the G900X was developed, marketed, and sold out of Garmin's Olathe, Kansas headquarters.

---

[15] *Id.* (internal citations omitted).

For personal jurisdiction purposes, a party is subject to estoppel when it holds itself out as being in a joint venture, even if it is not a true joint venture.[16] By claiming and holding himself out to be in a joint venture with Garmin, and in fact seeking coverage under an indemnification policy issued by Plaintiffs to Garmin as a joint venturer with Garmin, Bartle is now estopped from claiming lack of personal jurisdiction.

Under the "joint venture theory," the minimum contacts of one joint venturer are attributable to the other joint venturers such that personal jurisdiction over one means personal jurisdiction over the other venturers.[17]  The Court clearly has personal jurisdiction over Garmin whose principle place of business is in Kansas, and because Bartle is estopped for personal jurisdiction purposes, Garmin's contacts are sufficient to establish minimum contacts for Bartle.

The court finds that Bartle's actions are sufficient to establish the necessary minimum contacts.

*ii. The Balance of the Reasonableness Test Factors Show that Exercising Jurisdiction does not Offend "Fair Play and Substantial Justice"*

In a specific jurisdiction case, the defendant's connection to the forum state must be such that "he reasonably should have anticipated being haled into court there," and if so, the court must determine whether the exercise of personal jurisdiction over the defendant "offends the notions of

---

[16] *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 57 (1st Cir. 2002).

[17] *Hill v. Shell Oil. Co.*, 149 F. Supp. 2d 416, 418 (2001).

fair play and substantial justice."[18] The fair play and substantial justice prong requires that the exercise of jurisdiction must be reasonable.

In determining whether the exercise of personal jurisdiction is "so unreasonable as to violate 'fair play and substantial justice,' [the Court] considers the following factors: ( 1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.[19]

Under the first prong of the reasonableness test, Bartle will face the burden and expense of traveling a significant distance as well as defending himself in litigation in a foreign forum. This is a significant burden which weighs in Bartle's favor.

That said, Kansas does have an interest in resolving the dispute. The dispute involves coverage under an insurance policy issued in Kansas to a Kansas resident; furthermore, the policy is governed by Kansas law. Because of these factors, The second prong weighs heavily in favor of the reasonableness of the Court exercising jurisdiction.

Finally, under the fourth prong, Bartle identified eight witnesses in his initial disclosure who are in Kansas. In addition, Garmin executives who can also act as witnesses regarding the existence and approval of a joint venture with Bartle are also in Kansas. This prong also weighs in favor of the Court exercising jurisdiction over Bartle.

---

[18] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998).

[19] *Id.* at 1095-96.

-10-

The third and fifth prongs of the test are not significant in this case. Based on the balance of the factors, the Court finds that exercising personal jurisdiction over Bartle is not so unreasonable as to violate "fair play and substantial justice."

After weighing these factors and evaluating Bartle's contacts with Kansas, the Court denies the Rule 12(b)(2) motion to dismiss.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss the declarative judgment action (Doc. 9) is **DENIED**

**IT IS THEREFORE FURTHER ORDERED** that Defendant's 12(b)(2) Motion to Dismiss for lack of personal jurisdiction (Doc. 21) is **DENIED**

**IT IS SO ORDERED**.

Dated this 6th day of April, 2012

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE