# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CERTAIN UNDERWRITERS AT
LLOYD'S LONDON, et al.

     *Plaintiffs,*

vs.

    Case No. 11-cv-2426-EFM

GARMIN INTERNATIONAL INC., et al.,

    *Defendants.*

## MEMORANDUM AND ORDER

This is a declaratory judgment action by certain foreign and domestic insurers ("Plaintiffs") seeking a declaration that they do not have a duty to defend or indemnify Defendant Henry Bartle for claims asserted in a lawsuit pending in California state court arising out of the crash of Defendant Bartle's airplane. Bartle claims that he is entitled to coverage under an Aviation Products and Grounding Liability Insurance Policy (the "Policy") issued to Garmin International, Inc., because he formed some type of business entity with Garmin when his friend, a Garmin AT, Inc., employee, helped him build the aircraft at Bartle's hangar in Oregon. Before the Court is Plaintiffs' Motion for Summary Judgment (Doc. 26), Plaintiffs' Second Motion for Summary Judgment (Doc. 71), and Bartle's Motion for Summary Judgment (Doc. 67). For the reasons set forth below, the Court finds that Defendant Bartle is not entitled

to coverage under the Policy. The Court grants Plaintiffs' Second Motion for Summary Judgment (Doc. 71) and denies the remaining motions before the Court.

## I.    Factual and Procedural Background

**A.    The Insurance Policy Issued to Garmin**

Plaintiffs issued an Aviation Products and Grounding Liability Insurance Policy AB0700442 (the "Policy") to Garmin International, Inc. ("Garmin") that was in effect from November 30, 2007, to November 30, 2008.

The Schedule page of the Policy lists the "Insured" as follows:

> GARMIN INTERNATIONAL, INC., GARMIN USA, INC., GARMIN LTD, GARMIN CORPORATION, GARMIN EUROPE LIMITED, PRONAV CORPORATION, PRONAV INTERNATIONAL, INC., GARMIN AT, INC., GARMIN B.V., GARMIN N.V., MOTIONBASED and any subsidiary corporation or subsidiary thereof now existing or hereinafter created. Subsidiary corporation shall mean any entity that is under the ownership or management control of Garmin International, Inc., Garmin Corporation, Garmin Europe Limited, Pronav Corporation and Pronav International, Inc. and/or subsidiary companies and/or affiliated companies and/or associated companies for their respective rights and interests.[1]

The term "Insured" is further defined in the Policy at Definition (G) and amended per the "ADDITIONAL CONDITIONS," to read:

> The word "Insured" shall mean the Insureds named above and all subsidiaries, affiliated, associated, or allied companies, corporation, foundations, firms, joint ventures, partnerships, or any entities entered into, acquired, or formed, now existing, which may have existed, or hereafter be constituted after the effective date of this policy by any such Insured and over which such Insured has any ownership interest, or exerts financial control, or has assumed or exercised management control, or for which the Insured has obligation to provide insurance.[2]

The Schedule contains the following provision regarding the address of the "Insured":

---

[1]    Policy, Doc. 27-1, p. 2.

[2]    Policy, Doc. 27-1, p. 8.

1200 East [sic] 151st Street Olathe, Kansas 66062, United States of America.
The Insured is:  Corporation[3]

And, the Information page in the Policy states the following:

The Insured owns a corporate hangar located at New Century Airport in Overland Park, Kansas, which is used mainly to hangar Garmin Owned aircraft.  This facility is occasionally used for temporary (overnight) storage of customers aircraft who visit their facility. . . .[4]

The Aircraft Builders Products Liability Insurance Wording section of the Policy provides, through "Coverage A- PERSONAL INJURY AND PROPERTY DAMAGE LIABILITY," that Plaintiffs agree:

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of personal injury, sickness or disease, including death at any time resulting therefrom sustained by any person (herein referred to as "Personal Injury") and because of injury to or destruction of property including the loss of use thereof (herein referred to as "Property Damage"), caused by an Occurrence arising out of the Products Hazard.[5]

That section also provides, through "DEFENCE- OTHER PAYMENTS," that Plaintiffs agree:

To defend any claim or suit against the insured alleging such Personal Injury, Property Damage,  or Grounding of completed aircraft occurring after delivery to and acceptance by a purchaser or operator of such aircraft for flight operations, and seeking damages on account thereof, even if such claim or suit is groundless, false or fraudulent . . . .[6]

The term "Products Hazard" is defined to mean the "handling or use of (other than by the Insured) or the existence of any condition in an Aircraft Product (1) when such Aircraft Product is not in the possession of the Insured and (2) when such Aircraft Product is away from premises

---

[3]     Policy, Doc. 27-1, p. 2.

[4]     Policy, Doc. 27-1, p. 10.

[5]     Policy, Doc. 27-1, p. 14.

[6]     *Id.*

owned, rented, or controlled by the Insured."[7]  The term "Occurrence" is defined to mean "an

accident . . . which arises out of the Products Hazard and causes, during the Insurance Period,

Personal Injury or Property Damage which is neither expected nor intended from the standpoint

of the Insured."[8]

The Policy also provides an Excess Liability Extension that provides coverage for "all

sums which the Insured shall become legally obligated to pay as damages because of Bodily

Injury and/or Property Damage caused by an Occurrence during the period of insurance arising

out of the Insured's operations covered by and as more fully set forth in the underlying

insurance."[9]  The "underlying insurance" is identified on the Information page of the Policy as an

"Aircraft Owned/Non Owned Liability" policy and a "Hangarkeepers and Premises Liability"

policy issued by an insurer identified as "GAUM."[10]  For coverage under the Excess Liability

Extension to attach, the Policy requires:

> (d) Attachment of Liability
>
> Liability to pay under this Extension shall not attach unless and until the
> underlying insurers shall have admitted liability for the underlying limit or unless
> and until the Insured has by final judgment been adjudged to pay an amount
> which exceeds such underlying limit and then only after the underlying insurers
> have paid or have been held liable to pay the full amount of the underlying limit.[11]

---

[7]    Policy, Doc. 27-1, p. 15.

[8]    Policy, Doc. 27-1, p. 16.

[9]    Policy, Doc. 27-1, p. 4.

[10]   Policy, Doc. 27-1, p. 10.

[11]   Policy, Doc. 27-1, p. 5.

**B. Defendant Bartle's Lancair IV Aircraft and Relationship with Garmin**

In fall 2006, Garmin was looking to install one of its avionics products, designated the G900X, in home-built, experimental aircraft, including the Lancair IV aircraft. At the same time, Defendant Bartle was building his own Lancair IV at his hangar in Oregon. According to Bartle, he built ninety-five percent of the aircraft himself while the other five percent was built by multiple people, including Bartle's neighbor and best friend Chris Schulte, who designed and installed the electrical system in the airplane.

Schulte was a Garmin AT employee. In late 2006, Schulte approached Bartle about installing the G900X into his aircraft in exchange for Bartle giving him and other Garmin employees access to his aircraft to obtain installation and substantiation data. Bartle agreed, and in late 2006 or early 2007, Schulte purchased the G900X for Bartle from Garmin using his employee discount. Per Garmin policy, Schulte paid for the G900X with a personal check, and then resold the system at the same price to Bartle.

Schulte performed the majority of his work on Bartle's aircraft on the weekends at Bartle's hangar in Oregon. He did not work on the aircraft at Garmin, and he did not view working on the aircraft as a Garmin activity. Rather, he believed he was doing the work as a friend. Schulte had limited help with the installation and set-up of the G900X system from other Garmin employees. One Garmin employee installed part of the wiring in Bartle's aircraft at Bartle's hangar, per Schulte's request. Another Garmin employee went to Bartle's hangar to obtain data from the aircraft, which was used to create technical drawings and portions of the G900X installation manual.

The G900X uses an aircraft-specific bracket to hold one component of the system in place. Because of his background in composite fabrication, Bartle designed this bracket for the

installation of the G900X system in his aircraft. Garmin used the design of Bartle's bracket in the G900X installation manual and listed Bartle's company, the "Ultimate Group," as the supplier for that bracket in the manual. The Ultimate Group has sold approximately ten brackets for use with the system.

During the installation of the G900X system, Bartle was never employed by Garmin, was never paid a salary, and never received any financing from Garmin. When asked whether Garmin had any commercial interest in installing the G900X in his aircraft, he said that the installation was "more of a favor to allow them to use the airplane to make brackets so that they could make their installation manual and everything to put the 900 into the Lancair aircraft."[12] Bartle never attended any development or weekly planning meetings at Garmin during the installation and did not receive notes from those meetings. Bartle had no written contract with Garmin, did not sign any releases, and Garmin never provided Bartle with any written instruction or parameters for any work on the aircraft.

Bartle received a Certificate of Registration for the aircraft in November 2007 and a Special Airworthiness Certificate for the aircraft in January 2008. The registration lists "Trustees" Henry and Donna Bartle as the registered owners of the aircraft.

C.    **The California Lawsuit and Bartle's Tender of Defense and Indemnification**

On February 26, 2008, Bartle was operating his aircraft in Riverside County, California, on a personal, sight-seeing flight. On board the aircraft were Bartle's step-daughter, her friend, and her friend's minor daughter. All were injured when the aircraft engine lost power during flight and crash landed short of the runway. The passengers and their respective spouses filed

---

[12]    Bartle Dep., Doc. 72-3, pp. 10-11.

individual suits against Bartle and others, including forty "Doe" defendants, in Los Angeles County Superior Court seeking damages for their injuries. Bartle subsequently brought suit against Performance Engines and Light Speed Engineering for claims of product liability, negligence, and breach of warranty. Bartle also added Garmin and Garmin AT as defendants alleging joint venture and claiming total equitable indemnity, comparative indemnity, equitable apportionment of fault, and contribution. All of these suits have been consolidated into a single lawsuit currently pending in California state court (the "underlying lawsuit").

The passengers on board Bartle's aircraft have asserted four claims in the underlying lawsuit: strict product liability, negligence, breach of express and implied warranties, and loss of consortium. The only two claims asserted against Bartle are negligence and loss of consortium. These claims are asserted against Bartle in his individual capacity. The negligence cause of action alleges that Bartle "breached his duty to [defendants] by negligently operating the airplane such that the airplane crashed to the ground, thereby injuring them."[13] The California complaint also alleges that the defendants were negligent in the building and fabrication of the aircraft and that Bartle and Garmin (one of the "Doe" defendants) were acting as "agents, servants, employees and/or joint venturers" of one another and were "acting within the course, scope, and authority of said agency, employment and/or venture."[14]

By letter dated June 29, 2011, Bartle's counsel tendered the defense and indemnification of the negligence claims against him in the underlying lawsuit to Plaintiffs under the Policy asserting that the aircraft "was built in a joint venture with Garmin" and that the Policy "includes

---

[13]     California State Court Complaint, Doc. 68-6, p. 9 (attached as Exhibit F to Defendant Bartle's Memorandum in Support of Summary Judgment).

[14]     California State Court Complaint, Doc. 68-6, p. 6.

coverage for all Garmin joint ventures."[15]  Plaintiffs denied coverage by letter dated July 26, 2011, citing among other things, lack of any evidence that Bartle was in a joint venture with Garmin under Kansas law.

Plaintiffs initiated this declaratory judgment action on August 2, 2011, asking the Court to find, in part, that they have no duty to defend and indemnify Bartle for any of the claims or allegations against him in the underlying lawsuit.  The Parties have now moved for summary judgment on Plaintiffs' claims.  Plaintiffs have filed two motions for summary judgment (Docs. 26 and 71), and Defendant Bartle has also filed a motion for summary judgment (Doc. 67).

## II.  Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[16] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[17]  The movant bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[18]  If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[19]

---

[15]    Letter, Doc. 68-6, p. 2.

[16]    Fed. R. Civ. P. 56(c).

[17]    *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[18]    *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[19]    *Id*. (citing Fed. R. Civ. P. 56(e)).

These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits.[20] Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[21]

### III.    Analysis

### A.    Plaintiffs' Motions for Summary Judgment

As previously noted, Plaintiffs have filed two motions for summary judgment.  In their first motion, Plaintiffs ask the Court to grant summary judgment on the basis that assuming that Bartle is an "Insured" under the Policy, then he is not entitled to coverage based on the requirements of the Policy and its exclusions.  In their second motion, Plaintiffs ask the Court to grant summary judgment on the basis that Bartle is not an "Insured" under the Policy.  The Court will address Plaintiffs' second motion first.

### 1.    Plaintiffs' Second Motion for Summary Judgment (Doc. 71)

Plaintiffs assert two arguments in support of their second motion for summary judgment.  First, they argue that Bartle is precluded from coverage based on the allegations in the underlying lawsuit.  Second, they argue that Bartle is not entitled to coverage because he is not entitled to "Insured" status under the Policy because there is no evidence of a joint venture or other business entity between him and Garmin.  As explained below, the Court agrees with both of Plaintiffs' arguments and grants summary judgment in their favor.

> a.    Defendant Bartle Is Precluded from Coverage Based on the Allegations in the Underlying Lawsuit.

---

[20]    *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[21]    *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

Plaintiffs contend that Bartle is precluded from coverage because he asserts that he was a "consumer" at the time of the accident and the Policy only provides coverage for "Insured[s]," not consumers of a Garmin product. According to Plaintiffs, the only claims asserted against Bartle in the underlying lawsuit are those asserted against him individually arising from his negligent operation of the aircraft. Plaintiffs argue that because the definition of "Insured" does not encompass Bartle individually, there is no basis to find that Bartle is entitled to coverage under the Policy.

The Court agrees. Regardless of his role as "consumer" at the time of the accident, Bartle is precluded from coverage because he is not entitled to status as an "Insured" under the Policy in his individual capacity and the underlying lawsuit only asserts claims against Defendant Bartle in that capacity. To explain more fully, the term "Insured" is defined in the Aircraft Builders Products Liability Insurance Wording section of the Policy as Garmin and its subsidiaries as well as:

> all subsidiaries, affiliated associated or allied companies, corporation, foundations, firms, joint ventures, partnerships, or entities, entered into, acquired, or formed, now existing, which may have existed, or hereafter be constituted after the effective date of this policy by any such Insured and over which such Insured has an ownership interest, or exerts financial control, or has assumed or exercised management control, or for which the Insured has an obligation to provide insurance.[22]

Based on this definition, Bartle cannot be an "Insured" in his individual capacity. The only person who can be an "Insured" under the Policy is the alleged joint venture or other entity listed in the definition of "Insured" above between Garmin and Bartle (the "Garmin/Bartle entity"). Furthermore, the Policy's indemnification provision states that Plaintiffs will pay "on behalf of

---

[22] Policy, Doc. 27-1, p. 8.

the Insured all sums which the Insured shall become legally obligated to pay as damages . . . ." Here, the underlying lawsuit lists Bartle in his individual capacity as a defendant. It does not list the alleged Garmin/Bartle entity as a defendant. Therefore, even if the alleged Garmin/Bartle entity did exist, it cannot be found "legally obligated" to pay damages, and there is no coverage under the Policy for the claims asserted in the underlying lawsuit.

Defendant Bartle argues that he is not precluded from coverage because the Complaint in the underlying lawsuit alleges that Bartle and Garmin "were the agents, servants, employees, and/or joint venturers" of one another and were each "acting within the course, scope and authority of said agency, employment and/or venture," and that defendants were negligent in the building of the aircraft. These allegations, however, do not legally obligate the alleged Bartle/Garmin entity to pay any damages in the underlying lawsuit. Rather, they impose individual liability on each defendant for their actions taken while acting as part of the alleged Bartle/Garmin entity.

Bartle also argues that the allegations in the underlying lawsuit at least require Plaintiffs to defend him in the underlying lawsuit. In support of this argument, Bartle relies on the Kansas Supreme Court's decision in *Miller v. Westport Insurance Corp.*,[23] which states that "insurers have a duty to defend if there is a potential for liability."[24] However, when the issue is whether the party seeking coverage is an insured, the Kansas courts have applied "the ultimate showing test," which states that the duty to defend does not arise until it is shown that the person seeking

---

[23] 288 Kan. 27, 200 P.3d 419 (2009).

[24] 288 Kan. at 35, 200 P.3d at 424.

coverage is, in fact, an insured.[25]  In *Williams v. Community Drive-In Theater, Inc.*,[26] the Kansas Court of Appeals explained why the ultimate outcome was controlling when determining whether a party was entitled to defense under the policy:

> Before the general principle regarding the duty to defend applies, it must be shown that under the policy the defendant is in fact an insured, named or omnibus. This must be so because the insurer's obligation is not to provide a defense for a stranger merely because the plaintiff alleges that the defendant is an insured or alleges facts which, if true, would make him an insured. While an insurer may not decline the defense of an insured against an ultimately groundless claim, neither may it be compelled to defend an action against a party not entitled thereto under the policy provisions.[27]

According to the *Williams* court, "the plaintiff may not create an obligation on the part of the insurer where no obligation previously existed."[28] Here, the Court has already found that there is no coverage under the Policy for either Defendant Bartle individually or the Garmin/Bartle entity.  Therefore, under the ultimate showing test, Plaintiffs have no duty to defend Bartle in the underlying lawsuit.

        b.        Defendant Bartle Has Not Met His Burden to Show That a Joint Venture or Any Other Type of Entity Existed between Him and Garmin.

Plaintiffs also contend that summary judgment is appropriate because the evidence shows that there was no joint venture between Garmin and Bartle to entitle Bartle to "Insured" status under the Policy.  Although Plaintiffs limit their motion to whether Bartle and Garmin were engaged in a joint venture, at oral argument before the Court, Plaintiffs' counsel stated that any

---

[25]    *Martin K. Eby Const. Co. v. One Beacon Ins. Co.*, 2013 WL 676569, at *8 (D. Kan. Feb. 25, 2013); *see also S. Cent. Kan. Health Ins. Group v. Harden & Co. Ins. Servs., Inc.*, 278 Kan. 347, 353, 97 P.3d 1031, 1035 (2004) ("When there is no coverage under the insurance policy, there is no duty to defend.").

[26]    3 Kan. App. 2d 352, 595 P.2d 724 (1979).

[27]    3 Kan. App. 2d at 354, 595 P.2d at 726.

[28]    *Id.*

of the entities listed in amended definition of "Insured" under the Policy would be entitled to coverage. Plaintiffs have also stated that there is no evidence of any such entity between Bartle and Garmin in this case.

In response, Bartle claims that he has submitted sufficient evidence of either a joint venture or other business entity between him and Garmin to defeat Plaintiffs' motion for summary judgment. Bartle claims that the evidence shows that Garmin, through its employee Chris Schulte, entered into an express agreement under which Garmin agreed to sell to Bartle and install in his aircraft, a G900X system, including the design and installation of the aircraft's electrical system, for a $20,000 discount. In exchange, Bartle permitted and assisted Garmin in developing the bracketry, mounts, locations, and installation manuals Garmin needed to market the G900X for the Lancair aircraft.

The Court finds that Bartle has not met his burden to overcome Plaintiffs' motion for summary judgment. Because Bartle is seeking coverage under the Policy, he has the burden to show that he is entitled to coverage in the first instance.[29] Therefore, Bartle must "set forth specific facts" that would be admissible in evidence at trial from which a rational trier of fact could find that a joint venture or other business entity existed between him and Garmin.[30] Bartle has failed to do this. Practically all of the facts that Bartle relies on to support the existence of a joint venture or other business entity fail to conform to D. Kan. Rule 56.1. That rule states:

> 1) A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the

---

[29]  *Kansas Farm Bureau Ins. Co. v. Reynolds*, 16 Kan. App. 2d 326, 328, 823 P.2d 216, 218 (1991).

[30]  *Celotex*, 477 U.S. at 325 (citing Fed. R. Civ. P. 56(e)).

opposing party relies, and, if applicable, state the number of movant's fact that is disputed.

(2) If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party will be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.[31]

Bartle attached over 700 pages of exhibits to his response to Plaintiffs' motion but fails to cite to specific page numbers or facts within these exhibits in support of his Additional Statement of Uncontroverted Facts. More specifically, when describing the alleged Garmin/Bartle entity, he cites to over 400 pages of exhibits without any reference to any page number or fact within those exhibits. The Court will not sift through the record in an attempt to find a genuine issue of material fact or locate arguments for Bartle.[32] It is his responsibility to tie the facts to his legal contention.[33] "Without a specific reference, '[the Court] will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury.' "[34] The Court therefore disregards those facts that Bartle has not supported with specific citation to the record.

Moreover, those facts that Defendant Bartle specifically referenced in the record do not allow a rational trier of fact to find that there was a joint venture or other Garmin/Bartle entity. There is no evidence that Garmin intended to or actually entered into a joint venture or formed

---

[31] D. Kan. Rule 56.1(a).

[32] *KM Mentor, LLC v. Knowledge Mgmt. Prf'l Soc'y, Inc.*, 712 F. Supp. 2d 1222, 1230 (D. Kan. 2010) (citing *Boldridge v. Tyson Foods, Inc.*, 2007 WL 1299197, at *2 (D. Kan. May 2, 2007)).

[33] *Id.*

[34] *Id.* (quoting *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995)).

any other business entity with Bartle.  Indeed, Garmin denies the existence of any association between the parties, and there are no express agreements evidencing the existence of such association.  Because of a lack of express agreement between the parties, the only way that such joint venture or other entity could exist is if Bartle's friend, Chris Schulte, had the apparent authority to bind Garmin to a joint venture or other business entity with Bartle.

"Apparent authority exists where a principal, either intentionally or negligently, creates an appearance that its agent possesses authority to act or contract in the name of the principal, and a third party reasonably relies on that appearance of authority."[35]  "The apparent authority of an agent to bind the principal rests upon words or conduct of the principal which leads the third party dealing with the agent to reasonably believe the agent's authority is sufficient to cover the transaction in question."[36]  In some instances, "the words or conduct of the principal are overt or explicit."[37]  In other instances, "the mere relationship between the agent and principal or the title conferred upon the agent by the principal is sufficient to constitute a representation of authority."[38]  Examples of these types of cases are the so-called "powers of position" cases, which include:  general manager, president, and partner.[39]

Here, Bartle has produced no evidence showing that Chris Schulte had the apparent authority to bind Garmin.  At the time Schulte approached Bartle about installing the G900X

---

[35]   *FDIC v. Medmark, Inc.*, 902 F. Supp. 1430, 1434 (D. Kan. 1995)

[36]   *Bucher & Willis Consulting Eng'rs, Planners, and Architects v. Smith*, 7 Kan. App. 2d 467, 470, 643 P.2d 1156, 1159 (1982).

[37]   *Id.*

[38]   *Id.*

[39]   *Id.* (citing *Hull v. Mfg. Co.*, 92 Kan. 538, 141 Pac. 592 (1914); *W. Adver. Co. v. Crawford*, 128 Kan. 145, 276 Pac. 813 (1929); *Solomon R.R. Co. v. Jones*, 30 Kan. 601, 2 Pac. 657 (1883); *Belluomo v. KAKE TV & Radio, Inc.*, 3 Kan. App. 2d 461, 596 P.2d 832 (1979)).

system into Bartle's aircraft, Schulte was a supervisor of an aircraft engineering group that developed installation data for Garmin equipment. This is not a position of power sufficient to constitute a representation of authority. Furthermore, there is no other written evidence or oral testimony showing overt or explicit conduct on Garmin's behalf granting Schulte such apparent authority. Therefore, because Schulte did not have the power to bind Garmin, there was no Bartle/Garmin entity.

Besides failing to show that Schulte had the authority to bind Garmin to a joint venture or other business entity, Bartle has also failed to come forward with specific facts showing that such joint venture or business entity ever existed. There is no evidence that Bartle ever expected to receive any profit from his arrangement from Garmin.[40] Although Bartle's company, The Ultimate Group, was listed in the G900X installation manual as the supplier of the bracketry needed for the system and has since sold ten brackets, this is a benefit received by The Ultimate Group and not Bartle himself. The evidence also shows that Bartle was never employed by Garmin, never received a salary from Garmin, and never received any financing from Garmin. Bartle also never participated in any Garmin development meetings for the G900X system. Accordingly, the Court finds that the Defendant Bartle has failed to meet his burden to come forward with specific facts showing that he is entitled to "Insured" status under the Policy.

       c.       The Court Will Not Stay or Decline to Decide the Joint Venture/ Business Association Issue in Favor of the California State Court's Decision.

---

[40] Both the definition of joint venture and partnership—two entities listed in the amended definition of "Insured" under the Policy—require that the entity carry out a business or enterprise for profit. A joint venture is defined as an "association of two or more persons or corporations to carry out a single enterprise for profit." *Paradigm Alliance Inc. v. Celeritas Techs., LLC*, 659 F. Supp. 2d 1167, 1178 (D. Kan. 2009). The Kansas Uniform Partnership Act defines a "partnership" as "an association of two or more persons to carry on as co-owners a business for profit . . . ." K.S.A. § 56a-101.

In an attempt to overcome Plaintiffs' motion, Bartle argues that the Court should stay the action or decline to decide the Garmin/Bartle entity issue in favor of the underlying California lawsuit. Bartle, however, previously raised this issue with the Court in a motion to dismiss (Doc. 9), which the Court denied (Doc. 33). The time to seek reconsideration of the Court's decision has passed.[41] Moreover, Bartle has not put forth any persuasive facts or argument that would cause the Court to reverse its previous decision to hear this declaratory judgment action. Accordingly, the Court will not decline to stay or decide this action in favor of the California state court's ruling on whether Bartle and Garmin were engaged in a joint venture.

d. The Excess Liability Policies Are Irrelevant.

Finally, Bartle also argues that the Court should deny Plaintiffs' second motion for summary judgment because of the existence of two underlying policies, titled "Aircraft Owned/Non Owned Liability" and "Hangarkeepers and Premises Liablity" (the "Underlying Policies"), that provide coverage under the Excess Liability Extension in the Policy. According to Bartle, the Underlying Policies support his claim for defense and indemnity because they highlight "a tremendous expansion of persons and Garmin-related entities insured by Plaintiffs, which will assist the Court in its determination whether or not the business association between Bartle and Garmin falls within Plaintiffs' vague and ambiguous description of 'who is Insured.' "[42] In response, Plaintiffs argue that Underlying Policies are irrelevant because they do not provide primary coverage to Bartle.

---

[41] *See* D. Kan. R. 7.3 ("Parties seeking reconsideration of non-dispositive orders must file a motion within 14 days after the order is filed unless the Court extends the time.").

[42] Defendant's Sur-Reply Memorandum in Opposition to Plaintiffs' Motions for Summary Judgment, Doc. 167, p. 4.

The Court agrees with Plaintiffs.  The Excess Liability Extension does not attach (1) "unless and until the underlying Insurers shall have admitted liability for the underlying limit" or (2) "unless and until the Insured has by final judgment been adjudged to pay an amount which exceeds such underlying limit and then only after the underlying Insurers have paid or been held liable to pay the full amount of the underlying limit."[43]  Neither of these conditions is present in this case.  The Insurers for the Underlying Policies denied coverage in November 2012, and the underlying Insurers have not paid or been held liable to pay the full amount of the underlying limit of the Policy.  Defendant Bartle has failed to show that there is any claim for excess coverage under the Underlying Policies, and therefore they have no relevance to his claim for coverage in this case.

Bartle has not met his burden to bring forth specific facts from which a rational trier of fact could find that he is entitled to coverage as an "Insured" under the Policy.  Accordingly, the Court grants Plaintiffs' Second Motion for Summary Judgment.

### 2.    Plaintiffs' First Motion for Summary Judgment (Doc. 26)

Plaintiffs' first motion for summary judgment asks the Court to find that, even if Bartle establishes he is an "Insured" under the Policy, Plaintiffs have no duty to indemnify or defend him given the requirements and exclusions for liability set forth in the Policy.  In light of its ruling on Plaintiffs' Second Motion for Summary Judgment, the Court declines to rule on Plaintiffs' first motion.  Therefore, Plaintiffs' Motion for Summary Judgment is denied as moot.

---

[43]    Policy, Doc. 27-1, p. 5.

## B.    Defendant Bartle's Motion for Summary Judgment (Doc. 67)

Bartle moves for summary judgment on two bases.  First, he asserts that the Court does not have subject matter jurisdiction because the Court does not have access to the Underlying Policies referenced in the Policy.  Bartle made this argument before the Underlying Policies were produced in the course of the litigation, and it is now moot.  Second, Bartle asserts that Plaintiffs cannot show that they are entitled to judgment on their Complaint because the use of the term "Insured" throughout the Policy is ambiguous and thus coverage must be construed in his favor. The Court disagrees.

Under Kansas law, "[a] policy is ambiguous 'when it contains language of doubtful or conflicting meaning based on a reasonable construction of the policy's language.' "[44]  "A term is not ambiguous merely because the parties disagree about the interpretation of the language."[45] " 'Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the fact of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning.' "[46]  When determining ambiguity, "the proper test is 'not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean.' "[47]

Bartle argues that the drafter's use of the phrase "the Insured" throughout the Policy is ambiguous because at certain points in the Policy, the term refers to the primary Insured, *i.e.*,

---

[44]    *Payless Shoesource, Inc. v. Travelers Cos., Inc.* 569 F. Supp. 2d 1189, 1195 (D. Kan. 2008) (quoting *Kemper Ins. Cos. v. Weber*, 38 Kan. App. 2d 546, 551, 168 P.3d 607, 610 (2007)).

[45]    *Id.*

[46]    *Id.* (quoting *Am. Family Mut. Ins. Co. v. Wilkins*, 285 Kan. 1054, 1059, 179 P.3d 1104, 1109-10 (2008)).

[47]    *Id.*

Garmin, over other Insureds. For example, Defendant Bartle points the following Policy provisions in the Schedule and Information pages that specifically refer to Garmin as the "Insured":

> 1200 East [sic] 151st Street Olathe, Kansas 66062, United States of America.
> The **Insured** is: Corporation[48]
> . . .
>
> The **Insured** owns a corporate hangar located at New Century Airport in Overland Park, Kansas, which is used mainly to hangar Garmin Owned aircraft. This facility is occasionally used for temporary (overnight) storage of customers aircraft who visit their facility. . . .[49]

Defendant Bartle then points to policy provisions in the Aircraft Builders Products Liability Insurance Wording that refer to "several insureds," "such "Insured," and "more than one Insured":

> Each of the **several insureds** covered by this Insurance shall have the same protection as **such Insured** would have had this Insurance been issued individually to each of them; provided, however, that the inclusion hereunder of **more than one Insured** shall not operate to increase the total liability of the Insurers beyond the limits stated in the Schedule.[50]

He then points to the choice of law provision within the Aircraft Builders Products Liability Insurance Wording, arguing that the use of the term "Insured" in this provision shows the drafter's intent to give specific meaning of the term "Insured" to Garmin.

> 16. Applicable Law
> This Insurance shall be governed by the laws of the State wherein **the Insured** has its principal place of business (as set forth in the Schedule) and will be subject

---

[48] Policy, Doc. 27-1, p. 2 (emphasis added).

[49] Policy, Doc. 27-1, p. 10 (emphasis added).

[50] Policy, Doc. 27-1, p. 21 (emphasis added).

to the jurisdiction of competent jurisdiction as provided for in Condition 20 Service of Suit.[51]

According to Bartle, by utilizing the phrase "the Insured" in such a way throughout the Policy, the drafters have created the reasonable impression that "the Insured" may refer specifically to the primary insured of the Policy, Garmin, yet at the same time, the definition of the term "Insured" includes other associated companies and ventures with Garmin, thus creating the impression that the Policy also provides coverage for such associated companies and ventures.

The Court does not agree. When viewing the Policy as a whole, the drafter's use of the term "Insured" is not ambiguous. The Schedule and first page of the Policy identify the "Insured" as Garmin International, Inc., Garmin subsidiaries, and affiliated or associated companies. The Aircraft Builders Products Liability Wording then provides a definition of Insured in "Definition (G)," which includes "the Insureds named in the Schedule" and other business entities. "Definition (G)" was amended in the Additional Conditions to include "joint ventures" and other associated entities with Garmin. This definition does not expand the definition of "Insured" found on the Schedule or anywhere other than Definition (G) to the Aircraft Builders Product Liability Insurance Wording. The first two references cited above appear only in the Schedule and Information pages and not in the Aircraft Builders Product Liability Insurance Wording section of the Policy. Thus, the term "Insured" in those provisions only refers to the "Insured" defined in the Schedule. The last two references cited above appear in the Aircraft Builders Product Liability Insurance Wording, which allows the definition of "Insured" to also include "joint ventures" and other entities associated with Garmin. The fact

---

[51]    Policy, Doc. 27-1, p. 24 (emphasis added).

that the Policy provides a different scope of the definition for specific coverage does not create ambiguity. Accordingly, the Court finds that the Policy is not ambiguous.

Even if the Court were to find the Policy ambiguous, the Court cannot grant summary judgment on Plaintiffs' claims. As the party seeking coverage under the Policy, Bartle has the burden to prove that he is entitled to "Insured" status under the Policy.[52] As explained above, to be entitled to coverage, Bartle must show the existence of a joint venture or other business entity described in the amended definition of "Insured" between him and Garmin. Bartle's motion provides no argument or evidence that he was involved in any type of business entity with Garmin. Therefore, Defendant Bartle's Motion for Summary Judgment is denied.

**IT IS ACCORDINGLY ORDERED** this 15th day of July, 2013, that Plaintiffs' Motion for Summary Judgment (Doc. 26) is hereby **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** this 15th day of July 2013, that Defendant Henry P. Bartle's Motion for Summary Judgment (Doc. 67) is hereby **DENIED**.

**IT IS FURTHER ORDERED** this 15th day of July 2013, that Plaintiffs' Second Motion for Summary Judgment (Doc. 71) is hereby **GRANTED**.

**IT IS SO ORDERED**.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[52] *See Kansas Farm Bureau Ins. Co.*, 16 Kan. App. 2d at 328, 823 P.2d at 218 (holding that an "Insured" has the burden of proving he is entitled to coverage).